UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| NORTHERN INDIANA METALS, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:07-CV-414-PRC |
| | ) | |
| IOWA EXPRESS, INC., and | ) | |
| GATEWAY FREIGHTWAYS, INC., | ) | |
|     Defendants. | ) | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff Northern Indiana Metals' Motion for Summary Judgment [DE 38], filed by Northern Indiana Metals on February 2, 2009, and on Defendant Iowa Express, Inc.'s Motion for Summary Judgment [DE 41], filed by Iowa Express, Inc. on March 2, 2009. For the following reasons, the Court hereby **DENIES** Northern Indiana Metals' Motion for Summary Judgment [DE 38] and also **DENIES** Iowa Express Inc.'s Motion for Summary Judgment [DE 41].

**PROCEDURAL BACKGROUND**

On November 26, 2007, Plaintiff Northern Indiana Metals ("Northern Indiana") filed a Complaint against both Defendant Iowa Express, Inc. ("Iowa Express") and Defendant Gateway Freightways, Inc. ("Gateway Freightways"), pursuant to 49 U.S.C. § 14706 (the Carmack Amendment), alleging that Iowa Express was at all relevant times an interstate motor carrier and that Gateway Freightways may have been operating as a freight forwarder rather than a freight broker. Northern Indiana further alleged that if the Carmack Amendment is found not applicable to Gateway Freightways, then alternatively, Gateway Freightways should be found liable under state law negligence claims. On January 28, 2008, Iowa Express filed its Answer, and on February 6, 2008,

Gateway Freightways filed its Answer. Then, on July 22, 2008, Defendant Iowa Express filed its First Amended Answer.

On February 2, 2009, Northern Indiana filed a Motion for Summary Judgment against Iowa Express. On March 2, 2009, Iowa Express filed a Motion for Summary Judgment and Response in Opposition to Northern Indiana's Motion for Partial Summary Judgment. On March 17, 2009, Northern Indiana filed both a Response to Iowa Express' Motion for Summary Judgment and Reply in support of its Motion for Summary Judgment. On March 26, 2009, Iowa Express filed its Reply in Support of its Motion for Summary Judgment. This Order addresses both Northern Indiana's and Iowa Express' motions for summary judgment.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**FACTS**

Northern Indiana is a metals finishing business located in Hammond/Whiting, Indiana that brokers metals and ingots, and also offers a de-tinning service–a service where tin is removed from scrap brass and copper. Northern Indiana arranged for 16,618 pounds of 260 brass and 23,378 pounds of 110 brass owned by Wallach Iron and Metal ("Wallach") to be shipped to Olin Brass Corporation ("Olin Brass"), located in East Alton, Illinois. Northern Indiana arranged the shipment through Gateway Freightways, an interstate transportation broker.[1] Gateway Freightways arranged for the actual transportation of the brass and selected Iowa Express as the common carrier to

---

[1] As of sometime after April 2007, Gateway Freightways is no longer in business.

transport the brass. The brass, divided into two separate loads, was to be transported on April 20, 2007 ("April 20 load") and April 23, 2007 ("April 23 load").

Iowa Express is a registered Federal Motor Carrier Safety Authority ("FMCSA") motor carrier, incorporated in the State of Iowa, and its trucks have the name "Iowa Express" affixed to the driver doors on placards, but lack a distinguishing logo. Iowa Express uses a combination of brokers and websites to book loads. Certain websites, such as "Internet Truck Stop" and "Get Load," require registration and entering a user name and password for access. Iowa Express has its passwords saved on six in-office computers.

An individual claiming to be from Iowa Express answered Gateway's "Internet Truck Stop" website posting and faxed Gateway the required documents–W-9, permit, proof of insurance, and FMCSA number. A Gateway Freightways employee then called the telephone number provided on the faxed information and an individual identifying himself as an Iowa Express employee answered by stating, "John, Iowa Express. John, can I help you?" Pl.'s Mot. Summ. J. Ex. 3 at 53.

On April 20, 2007, the first load of brass was picked up. Then, on April 23, 2007, a green semi-truck with "Iowa Express" markings arrived at Northern Indiana's facilities and the April 23 load was loaded onto the truck.[2] The driver of the truck–an individual that went by the name of "John"[3] who has since been identified as having a spider tattoo on his hand and bushy beard[4] –identified himself as a driver for Iowa Express and said he was taking the load on Wallach's behalf

---

[2] CEO of Northern Indiana, Jeffrey Condon, stated in his deposition that employees present for the loading of both the April 20 load and the April 23 load described the same individual, who identified himself as "John," picking up both loads.

[3] This individual also gave the name "John Stanpeck"

[4] Mr. Condon also stated in his deposition that one of his employees indicated that the driver may have had an accent.

to Olin Brass. He then issued Northern Indiana a bill of lading. The bill of lading issued to Northern Indiana shows Olin Brass as the "Deliver to" address and referenced both Iowa Express, the common carrier, and Gateway Freightways, the broker. "John" signed the bill of lading on behalf of Iowa Express and left Northern Indiana's facilities with the April 23 load. Both loads became missing. The April 20 load was later recovered elsewhere, but the April 23 load never arrived at Olin Brass and has not since been recovered. Northern Indiana alleges that both the April 20 load and the April 23 load were picked up by the same driver. When the April 20 load was discovered a week later, the FBI began investigating the stolen shipments.

Esad Gracanin ("Gracanin"), owner of Iowa Express, at his November 14, 2008 deposition, denied employing anyone by the name of "John," or anyone matching his physical description, and claimed to only employ drivers of eastern European descent. Further, Mr. Gracanin denied the authenticity of all the documents produced to Gateway Freightways, including the telephone and fax numbers.[5] Mr. Gracanin testified that Iowa Express keeps bills of lading in the regular course of business and that none of the April 2007 records showed a load picked up from Northern Indiana on either April 20, 2007 or April 23, 2007.[6] Further, not all loads were individually approved by Mr. Gracanin and Iowa Express allowed drivers to take trucks home if they were "clean." Pl.'s Mot. Summ. J. Ex. 2 at 43-45. A bill of lading dated March 19, 2007 indicates that Mr. Gracanin, made a delivery to Olin Brass one month before the events at issue.

---

[5] After the April 23 load became missing, Gateway Freightways looked more closely at "John's" documentation and discovered that the phone number "John" provided to Gateway belonged to a woman's cell phone. When Gateway called the woman, she stated that she did not have any knowledge of a "John." Gateway later found out that the fax number belonged to an Office Max in Oak Brook, Illinois.

[6] On April 23, 2007, Iowa Express does show a shipment of ingots under three bills of lading in the proximity of Olin Brass.

After making a business decision to do so, Northern Indiana compensated Wallach for the loss of the April 23 load, valued at $140,414.16, in order to keep good will between the two companies.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party

is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to

determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

When cross-motions for summary judgment are filed, the failure of one party to meet its burden does not automatically guarantee the success of the opposing party. 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2000). The court must rule on each motion for summary judgment on an "individual and separate basis." *Id.*

## ANALYSIS

In the instant Motions for Summary Judgment, Northern Indiana alleges that Iowa Express, a licensed interstate carrier of goods, is liable under the Carmack Amendment because Northern Indiana placed the missing shipment on an Iowa Express truck in good condition for which Northern Indiana seeks the value of the shipment plus prejudgment interest and costs. In response, Iowa Express argues in its Motion for Summary Judgment that Northern Indiana has failed to establish a prima facie case under the Carmack Amendment because Northern Indiana failed to prove any involvement by Iowa Express, the alleged interstate carrier of goods. Iowa Express also argues that it was a victim of identity theft. The Court now addresses both Motions for Summary Judgment.

### A. Northern Indiana's Prima Facie Case Under the Carmack Amendment

The Carmack Amendment, codified at 49 U.S.C. §14706, creates a nationally uniform rule concerning carrier liability and interstate shipments, and provides in relevant part as follows:

> [a] carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier [is] liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or

> route the property is transported in the United States . . . . Failure to issue a receipt or bill of lading does not affect the liability of a carrier. . . .

49 U.S.C. §14706; *see also N. Am. Van Lines, Inc. v. Pinkerton Sec. Sys., Inc.*, 89 F.3d 452, 454 (7th Cir. 1996). Given the complications that arise from the interstate shipment of goods, and the cost of contracting with different carriers, third parties often assist shippers by negotiating lower rates with carriers and offering their logistical services. *REI Transp. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 695 (7th Cir. 2008). The Carmack Amendment "provides shippers with the statutory right to recover for actual losses to their property caused by carriers." *Allied Tube & Conduit v. S. Pac. Transp.*, 211 F.3d 367, 369 (7th Cir. 2000).

In order to recover from a carrier, a plaintiff-shipper must establish its prima facie case by showing that (1) the goods in question were delivered to the carrier in good condition, (2) the goods arrived at the final destination in damaged or diminished condition, and (3) the amount of damages can be specified. *See id.* Once the Plaintiff satisfies its prima facie case, "the burden shifts to the carrier to show both that it was free from negligence and that the damage to the cargo was due to one of the excepted causes relieving the carrier of liability." *Id.*

In the instant motions, it is undisputed that Northern Indiana delivered the April 23 load to "John" who purportedly worked for Iowa Express. It is also undisputed that "John" left with the April 23 load, which has never been recovered. The Carmack Amendment does not distinguish between a lost load and damaged load for purposes of the second prong of Northern Indiana's prima facie case–"[t]he Carmack Amendment governs liability of a common carrier to a shipper for loss of, or damage to," a shipment. *N. Am. Van Lines*, 89 F.3d at 455. Further, the value of the lost load is undisputed. Accordingly, the second and third prongs of Northern Indiana's prima facie case are undisputed.

Given these undisputed facts, Iowa Express argues, in its Motion for Summary Judgment, that Northern Indiana has not met the first prong of its prima facie case because Northern Indiana has not proven that Iowa Express was the carrier who received the goods. Therefore, whether or not Northern Indiana's prima facie case is met, and simultaneously whether this case survives summary judgment, hinges on whether Iowa Express was the common carrier within the meaning of the Carmack Amendment for the alleged pilfering of the April 23 load.

Both parties present a significant amount of evidence regarding Iowa Express's involvement, or lack thereof, with the April 23 load. In support of its Motion for Summary Judgment, Northern Indiana presents evidence indicating that "John" answered Gateway Freightway's broker advertisement posted on the Internet Truck Stop website, only viewable through a registered and password protected account. Iowa Express maintained six computers that had its Internet Truck Stop usernames and passwords saved on them so that the information did not have to be reentered every time someone needed to log on. "John" then provided Gateway Freightways with paperwork that included FMCSA permit paperwork, insurance paperwork, and W-9 paperwork with Iowa Express identified as the carrier, and demonstrated his familiarity with Olin Brass's paperwork procedure. Further, "John," appearing as a bushy bearded man with a spider tattoo on his hand, arrived at Northern Indiana's loading dock and loaded the brass onto a green truck that had Iowa Express markings on it.

In response, and in support of its Motion for Summary Judgment alleging that Northern Indiana has failed to meet the first prong of its prima facie case, Iowa Express offers evidence that it has never employed anyone by the name of "John" or "John Stanpeck" and has never employed anyone matching his physical description. Further, Mr. Gracanin testified at his deposition that he

9

was absolutely certain that none of his drivers was involved in picking up the April 23 load as he is aware of where they go each day.[7] Further, Iowa Express has provided evidence that the documentation that "John" provided to Gateway Freightways was faulty in that the W-9 was typed, while Iowa Express does not type its W-9 forms; the W-9 form contained the wrong tax identification number; the certificate of insurance did not belong to Iowa Express; and the permit contained incorrect information. Also, the telephone and facsimile numbers that "John" provided to Gateway Freightways did not match Iowa Express's actual telephone and facsimile numbers, and Iowa Express did not have any bills of lading indicating that the April 23 load was picked up by Iowa Express. Nonetheless, the fact that Iowa Express allows its employees to bring Iowa Express trucks home if they are "clean" leaves open the possibility that one of Iowa Express's trucks could have been used to pick up the missing April 23 load.

After reviewing the evidence in this matter, the Court concludes that both parties have raised genuine issues of material fact as to whether Northern Indiana delivered its goods to Iowa Express. Accordingly, summary judgment must be denied as to both motions.

### B. Iowa Express's Burden to Rebut Northern Indiana's Prima Facie Case

Assuming that Northern Indiana could satisfy the first prong of its prima facie case, upon a shipper's showing of a prima facie case, the burden shifts to the defendant carrier "to show *both* that it was free from negligence *and* that the . . . [loss of] the cargo was due to one of the excepted causes relieving the carrier of liability." *Allied Tube & Conduit*, 211 F.3d at 369 (emphasis added). A

---

[7] Northern Indiana has provided evidence indicating that Mr. Gracanin was not entirely aware of the activities of his company. Particularly, Mr. Gracanin testified that Iowa Express did not ship alcohol, but Northern Indiana has provided evidence indicating that Iowa Express made several such shipments. Mr. Gracanin testified that not all loads had to be approved by him. Further, Mr. Gracanin testified that he was unable to recall delivering any loads to Olin Brass, even though Northern Indiana has provided a bill of lading indicating that Mr. Gracanin personally made a delivery to Olin Brass in March 2007–one month before the events at issue.

carrier may be relieved of liability by certain excepted causes, including: "(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) public authority; (e) or the inherent vice or nature of the goods." *Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964) (noting that the Carmack Amendment effectively codified common law liability for carriers); *see also Allied Tube & Conduit*, 211 F.3d at 369.

In this case, if Northern Indiana could establish its prima facie case under the Carmack Amendment, the burden would then shift to Iowa Express to rebut its liability. Iowa Express would need to show (1) that it was not negligent, and (2) that one of the excepted causes applies. After reviewing the record, the Court concludes that, based on the material before the Court, Iowa Express fails to meet either requirement.

To rebut liability, Iowa Express argues that it was a victim of identity theft, and therefore, it should not be liable. Here, Iowa Express has failed to present evidence rebutting that it maintained six computers at its office with its login and password for the Internet Truck Stop website saved so that this information did not need to be re-entered. Further, Iowa Express has failed to refute that it allowed its drivers to take its trucks home if the trucks were "clean." The undisputed facts demonstrate that "John" answered the broker's April 23 load advertisement, posted on its password protected website, and provided documentation that closely resembled Iowa Express' information, enough to convince the broker that "John" was an employee from Iowa Express. "John" then arrived at Northern Indiana's facilities and loaded the April 23 load onto a green truck with Iowa Express' markings on it. While Iowa Express attempts to escape liability by alleging that Gateway Freightway and Northern Indiana were negligent, by failing to verify the

authenticity of the documents and failing to verify "John's" identification and credentials, Iowa Express has not rebutted its own negligence.

Furthermore, even if Iowa Express were able to rebut its negligence, it still fails to show that any of the Carmack Amendment's excepted causes apply. Iowa Express argues that even if "John," the bearded and tattooed pilfering truck driver, was one of its employees, Iowa Express should not be liable under the theory of respondeat superior. However, respondeat superior is not one of the excepted causes under the Carmack Amendment[8] and Iowa Express fails to provide any legal authority holding to the contrary.

Accordingly, because Iowa Express would be unable to satisfy its burden under the Carmack Amendment and because genuine issues of material fact exist as to whether Northern Indiana satisfies the first prong of its prima facie case, summary judgment must be denied.

## CONCLUSION

---

[8] Iowa Express argues in its brief in support of its Motion for Summary Judgment that if "John" is found to be affiliated with Iowa Express, such an employee would be acting outside of the scope of his employment with Iowa Express. Iowa Express cites case law in support, but the case relied on, *Sobieski v. Ispat Island, Inc.*, 413 F.3d 628 (7th Cir. 2005), involves the Jones Act, which creates a federal negligence claim for seamen injured in the course of employment. *Id.* at 631; 46 U.S.C. § 688(a). This Court fails to see the connection Iowa Express is drawing between the Jones Act and the Carmack Amendment, which specifically outlines how and when the burden shifts to the defendant and what defendants must do to rebut liability.

Further, while there are no cases that directly address whether an employee acting outside the scope of his employment is an excepted cause under the Carmack Amendment, which Iowa Express argues in this case, a court in another district has addressed this issue. In *Paramore v. Tru-pak Moving Sys., Inc.*, the plaintiffs argued that the Carmack Amendment did not preempt state law claims because defendants acted ultra vires. 286 F. Supp.2d 643, 648 (M.D.N.C. 2003). The court, finding no case law directly on point, refused to conclude that ultra vires acts precluded Carmack Amendment preemption. *Id.*

Accordingly, based on the foregoing, the Court hereby **DENIES** both Northern Indiana's Motion for Summary Judgment [DE 38] and Iowa Express' Motion for Summary Judgment [DE 41].

SO ORDERED this 27th day of April, 2009.

                                           s/ Paul R. Cherry
                                           MAGISTRATE JUDGE PAUL R. CHERRY
                                           UNITED STATES DISTRICT COURT

cc:      All counsel of record